## NATIONAL LABOR RELATIONS BOARD
## v. WESTINGHOUSE AIR BRAKE CO.
### No. 7650.

Circuit Court of Appeals, Third Circuit.

June 12, 1941.

Sylvester Garrett, of Washington, D. C., for petitioner.

Earl F. Reed, of Pittsburgh, Pa., for respondent.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

The principal question raised in the pending matter is whether the National Labor Relations Board erred in concluding that the respondent had failed to discharge its statutory duty to bargain collectively

with the duly designated representative of its employees in a specified unit. The appropriateness of the unit, as determined by the Board, and the status of the bargaining agent as the exclusive representative of the unit's employees are neither disputed nor questioned. Also, it is conceded that the effect of the respondent's business upon interstate commerce is such as to render the respondent subject to the provisions of the National Labor Relations Act, 29 U.S. C.A. § 151 et seq.

After the usual proceedings envisioned by Section 10 of the Act, the Board concluded, on the basis of the cognate findings of fact which it made, that the respondent had refused, in violation of Section 8(1) and (5) of the Act, to bargain collectively with the representative of its employees. The Board's order ensued, directing the respondent to cease and desist and to take certain affirmative action for the future. To the Board's petition for a decree enforcing its order the respondent answers, alleging that the material findings made by the Board are not supported by substantial evidence and praying that enforcement of the order be denied. The respondent also contends, on the authority of National Labor Relations Board v. Express Pub. Co., 61 S.Ct. 693, 85 L.Ed. ——, that the general injunction in the order that the respondent cease and desist from violating the Act in all of its provisions exceeds the requirements of the Board's specific findings. On this, counsel for the Board conceded at bar that the injunction is too broad and moved that the order be amended accordingly. There remains, then, for consideration the question whether the Board's findings are supported by substantial evidence, and the respondent's incidental application that the matter be remanded to the Board for the purpose of taking additional testimony.

As a result of representation proceedings under Section 9 of the Act, the Board on December 4, 1937 certified the United Electrical and Radio Workers of America, Railway Equipment Workers Local No. 610 (now the United Electrical, Radio and Machine Workers of America, Local No. 610) as the exclusive representative of the respondent's production and maintenance employees (except superintendents, foremen, etc.) at its plant at Wilmerding, Pennsylvania.[1]

Following the certification, the union and representatives of the respondent on December 15, 1937 began negotiations, ostensibly looking to collective bargaining. From then until August 15, 1939, twenty-five formal meetings of such nature were held but, as the Board found, all were to no effect in so far as any agreement respecting rates of pay, wages, hours or other conditions of employment was concerned. The respondent counters with the assertion that one matter had been agreed upon, namely, the procedure to be followed in presenting employee grievances to the management. This, according to the respondent, had been definitely agreed upon between the union and the respondent on August 15, 1939, which, incidentally, was the date of the last of the formal meetings and shortly before the filing of the Board's complaint against the respondent. The amended charges against the respondent, whereon the Board's complaint was based, were filed with the Board on August 24, 1939. But, even assuming the verity of the fact asserted by the respondent, the Board's finding that nothing had been done in the way of bargaining collectively is fully supported by the evidence.

After the numerous formal meetings between the union and the respondent's representatives, extending over a period of twenty months, the only thing to which the respondent points as having been accomplished through the negotiations is the manner in which grievances were to be submitted,—a matter which in no way depends upon or requires the exercise of collective bargaining. The Act by its terms, Sec. 9(a), expressly confers upon "any individual employee or a group of employees * * * the right at any time to present grievances to their employer". The utter barrenness of the many meetings is the more evident from the respondent's reliance upon a matter which exists by virtue of a statute and not by grant from the employer as the result of negotiations. For the impasse which developed, the Board held the respondent responsible.

The Board found that "the respondent sought to confine its bargaining relations with the Union to consideration of grievances presented by the Union and concomitantly to reserve to itself unrestricted freedom of action in determining rates of

---

[1] See in the Matter of Westinghouse Air Brake Company and United Electrical and Radio Workers of America, Railway Equipment Workers Local No. 610, 3 N.L.R.B. 867 and 4 N.L.R.B. 403.

pay, wages, hours of employment, and other conditions of employment". The evidence supports the finding. As early as January 20, 1938, the respondent had issued a memorandum to its superintendents and to the union in which it declared its conception that "the collective bargaining relationship [consists] of presenting grievances by the [employees'] representatives, fair consideration by the Management, and issuance by the Management of necessary instructions covering the decisions reached." The respondent argues that the Board erred in concluding that the memorandum expressed the whole of the respondent's idea of the collective bargaining relationship. Be that as it may, if the respondent actually apprehended that collective bargaining with its employees' representative meant any more than that it should receive grievances when filed by the union and unilaterally dispose of them as it saw fit, its conduct in practice gave no hint of its larger understanding.

■ The evidence plainly shows that from the outset of the negotiations the respondent took the position that under no circumstances would it contract for any definite period with respect to wages, hours or other conditions of employment. As justification for this attitude, it openly asserted and uniformly insisted that the nature of its business was such as to require that its wage schedule be kept as flexible as possible at all times in order that it might successfully meet the exigencies arising out of the competition in the trade. It is true, as the respondent argues, that the Act does not compel either an employer or his employees to enter into any agreement. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; H. J. Heinz Co. v. National Labor Relations Board, 311 U.S. 514, 61 S.Ct. 320, 325, 85 L.Ed. ——. But that does not mean that the employer may arbitrarily seal his mind "against even the thought of entering into an agreement with the union" which has been duly accredited to act for the employees in matters related to their employment. And when an employer does so, he is guilty of an unfair labor practice under the Act. National Labor Relations Board v. Griswold Mfg. Co., 3 Cir., 106 F.2d 713, 723. See also National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F.2d 681, 688, and National Labor Relations Board v. High-

land Park Mfg. Co., 4 Cir., 110 F.2d 632, 639. As was said in the Heinz case, supra, 311 U.S. 514, 61 S.Ct. at page 325, 85 L.Ed. ——, "The freedom of the employer to refuse to make an agreement relates to its terms in matters of substance", etc. But, the employer is not free to refuse out of hand consideration of any and all proposals looking to agreement upon terms. The matters of substance and the terms respecting them are peculiarly subjects for negotiation.

■ It is the plain intendment of the Act that an employer shall bargain collectively with the representatives of his employees, Sec. 8(5), in respect to "rates of pay, wages, hours of employment, or other conditions of employment" Sec. 9(a). Such being the case, the vanity of bargaining where the employer has foreclosed in advance any possibility of agreement is patent. To say that in such circumstances the employer's participation in the negotiations is for the purpose of bargaining collectively would be to supplant actuality with mere seeming. The very situation renders impossible an exhibition by the employer of the good faith essential to the bargaining function. See National Labor Relations Board v. George P. Pilling & Son Co., 3 Cir., 119 F.2d 32, and cases there cited. Here, the evidence shows that the respondent was at pains to make clear and unmistakable that it would not contract with the union. And following the respondent's original announcement and after repeated reaffirmation of its intention not to contract for any definite period, it specifically refused to consider or discuss the union's proposals of "departmental" seniority, a plan for employee lay-offs and distribution of work or a modification of the wage scale. In each instance the respondent assigned as reason for its refusal that the matter was subject alone to the will of the company or was entirely for the company to decide or some similar statement. The evidence of these and like instances, which clearly appears from the record, and in large part from the notes of the meetings kept by one of the respondent's representatives, substantially supports the Board's findings and the findings sustain the Board's conclusion that the respondent violated Section 8(1) and (5) of the Act. It will hardly be disputed that an employer's refusal to treat with or even discuss relevant proposals made by his employees' bargaining representative constitutes a vi-

olation of the Act. In the present case the respondent's conduct was just as effective as any outspoken refusal to bargain could have been. The consequent result of the respondent's action was to restrain its employees in the exercise of their rights under Section 7 of the Act. See Wilson & Co., Inc. v. National Labor Relations Board, 8 Cir., 115 F.2d 759, 761 et seq.; National Labor Relations Board v. Highland Park Mfg. Co., supra, 110 F.2d at page 639; National Labor Relations Board v. Griswold Mfg. Co., supra, 106 F.2d at page 723; and Globe Cotton Mills v. National Labor Relations Board, 5 Cir., 103 F.2d 91, 94. Except for the modification, which we shall hereinafter consider, the Board's order was an appropriate exercise of its administrative authority.

The respondent further urges that the filing of the Board's complaint and the proceedings thereon were premature and that the matter should be returned to the Board for the respondent's presentation of evidence that it is willing to bargain collectively with its employees' representative. Thus, the respondent argues that evidence that the lay-off procedure which the union had proposed was assented to by the respondent (subsequent to the hearing before the Board but prior to its decision) would prove that the respondent does not refuse to bargain collectively and that evidence that the respondent has since submitted to the union a complete and comprehensive contract would likewise show a willingness to bargain collectively. But the question is not what the respondent's attitude may now appear to be, but what it was down through the hearing before the Board. In National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 271, 58 S.Ct. 571, 576, 82 L.Ed. 831, 115 A.L.R. 307, the Supreme Court said that a Board order "lawful when made, does not become moot because it is obeyed or because changing circumstances indicate that the need for it may be less than when made". See also National Labor Relations Board v. Newport News Shipbuilding & Dry Dock Co., 308 U.S. 241, 249, 250, 60 S.Ct. 203, 84 L.Ed. 219; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126. On the record as made upon the hearing, whereat the respondent had full opportunity to present all relevant matter, the Board's order is mature. The Board was therefore well within its discretionary power when it refused the respondent's petition to adduce additional testimony. International Association of Machinists v. National Labor Relations Board, 311 U.S. 72, 82, 61 S.Ct. 83, 85 L.Ed. —. Any other course would make a proceeding before the Board interminable for which an adjudicated offender's later repentance can furnish no valid excuse.

The Board found but one specific unfair labor practice by the respondent, namely, its refusal to bargain collectively with its employees' designated representative. The one instance of discriminatory conduct alleged in the complaint was ruled in favor of the respondent by the Trial Examiner whose action in such regard was confirmed by the Board. It is apparent therefore that the injunction in the order requiring the respondent to cease and desist from violating the Act in all particulars outruns the scope of the Board's findings. See National Labor Relations Board v. Express Pub. Co., 61 S.Ct. 693, 700, 701, 85 L.Ed. —. Accordingly, and as moved by counsel for the Board at bar, Paragraph 1(b) of the order will be modified so as to require no more than that the respondent shall cease and desist from "In any manner interfering with the efforts of the United Electrical, Radio and Machine Workers of America, Local No. 610, to bargain collectively with Westinghouse Air Brake Company, Wilmerding, Pennsylvania."

Modified as above required, the Board's order will be enforced.