## NATIONAL LABOR RELATIONS BOARD v. YOUNGSTOWN MINES CORPORATION et al.

### No. 527.

Circuit Court of Appeals, Eighth Circuit.
Nov. 13, 1941.
Rehearing Denied Dec. 4, 1941.

Guy Farmer, Atty., National Labor Relations Board, of Arlington, Va., (Robert B. Watts, Gen. Counsel, Laurence A. Knapp, Associate Gen. Counsel, Ernest A. Gross, Asst. Gen. Counsel, Richard C. Barrett, Atty., and Margaret M. Farmer, Atty., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Earl W. LeFever, of Cleveland, Ohio, and William K. Montague, of Duluth, Minn. (Luther Day and Thomas F. Veach, both of Cleveland, Ohio, Donald D. Harries, of Duluth, Minn., Jones, Day, Cockley & Reavis, of Cleveland, Ohio, and Gillette, Nye, Harries & Montague, of Duluth, Minn., on the brief), for respondents.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This case presents for consideration a petition of the National Labor Relations Board praying for a decree enforcing in whole the Board's order of July 31, 1940, directed to the respondents. The petition is resisted on two general grounds: (1) That the findings of fact upon which the order is predicated are not supported by substantial evidence and (2) that the order is broader in certain particulars than warranted by the issues.

The respondents Youngstown Mines Corporation, Sunday Lake Iron Company, Odanah Iron Company, and Vermillion Mining Company (hereafter referred to as Youngstown, Sunday Lake, Odanah, and Vermillion respectively) lease and operate iron ore mines. All of the mines involved in this proceeding are managed and operated under separate agency contracts by the respondent Pickands, Mather & Company, a co-partnership, hereafter referred to as Management. By this means Youngstown operates the Newport Mine at Ironwood, Michigan, and the Anvil-Palms Mine near Bessemer, Michigan; Sunday Lake operates the Sunday Lake Mine at Wakefield, Michigan; Odanah, the Cary Mine at Hurley, Wisconsin; and Vermillion, the Zenith Mine at Ely, Minnesota.

The complaint charged violation of §§ 7 and 8(1) and (2) of the National Labor Relations Act, 49 Stat. 449, c. 372, 29 U. S.C.A. § 151 et seq., and §§ 157, 158(1, 2).

The order directs all of the respondents

1. To cease and desist

(a) from dominating or interfering with the administration of certain unaffiliated labor organizations at their respective mines or contributing financial or other support to them;

"(b) In any other manner interfering with, restraining, or coercing their employees in the exercise of their right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activity for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the National Labor Relations Act."

2. That Sunday Lake and Management, affirmatively, (a) withdraw recognition from Sunday Lake Employees' Representation Plan as representative for the purpose of collective bargaining at the Sunday Lake Mine and disestablish said Plan, and (b) post appropriate notices.

3. That Youngstown and Management, affirmatively, (a) withdraw recognition from Newport Mine Workers' Association as representative for the purpose of dealing with respondents concerning grievances and disestablish the Association as such representative; (b) refuse to recognize Anvil-Palms Labor Union as representative of any employees at Anvil-Palms Mine; (c) post notices.

4. That Odanah and Management, affirmatively, (a) post notices at the Cary Mine that they will not engage in the conduct from which they are ordered to cease and desist in paragraphs 1(a) and (b).

5. That Vermillion and Management (a) post notices at the Zenith Mine that they will not engage in the conduct from which they are ordered to cease and desist in paragraphs 1(a) and (b) of the order.

6. That respondents shall within 10 days notify the Regional Director that steps have been taken to comply with the order.

The order is based upon specific findings that respondents had dominated and in-terfered with the administration of the unaffiliated labor unions at their respective mines in violation of § 8(2) of the Act and that they had interfered with, restrained, and coerced their employees in the exercise of rights guaranteed in § 7 of the Act.

To appreciate the respondents' contention that the findings are not supported by substantial evidence it will be necessary to review briefly the history of the labor organizations at the several mines involved in this proceeding.

In the spring of 1933 Management acting for the mining company respondents established at the several mines a Plan of Employees' Representation. The plan provided for the grouping of mines into districts. The Cary, Newport, Anvil-Palms, and Sunday Lake Mines were included in the Gogebic District located in the Gogebic Range in Wisconsin and Michigan. The Zenith Mine was in the Zenith District located on the Vermillion Range in Minnesota. The plan provided for the annual election of at least five representatives by the employees for each district and the appointment of an equal number of "company representatives" and of one for the Management. "Joint" committees in each district managed the affairs of the Plan, heard grievances and adjusted them. No provision was made for general meetings of employees, their participation being limited to the annual election of representatives, to attempts to bargain individually, and to the presentation of grievances to the representatives.

Prior to May, 1937, the Management financed the Plan and bore all the expenses.

The Act became effective July 5, 1935, and was held to be constitutional by the Supreme Court April 12, 1937, in the case of National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352.

The Plan continued in effect without change until May 11, 1937, at which time officers of the Management informed employee representatives at meetings in both the Gogebic and Zenith Districts that the Management would immediately cease its participation in the Plan and withdraw its representatives.

The Board found that the maintenance of the Plan prior to July 5, 1935, did not constitute an unfair labor practice. It is

conceded, and the Board found, that from July 5, 1935, until May 11, 1937, its administration was in violation of § 8(2) of the Act.

In the Gogebic District amendments to the Plan were distributed on May 14, 1937, and adopted by the representatives. The revision was limited to a rewriting of the preamble, to the deletion of the provisions for company and Management representatives, for participation of supervisory officials in the administration of the Plan, and to the insertion of an article creating a district organization. The fundamental structure of the organization remained unchanged. After the elections in June, 1937, the District organization no longer functioned; and the local units at the various mines continued as separate organizations under the names Employees' Association at the Newport Mine, Cary Employees' Association, Anvil-Palms Representation Group, and Sunday Lake Plan of Employees' Representation.

In the Zenith District elections of representatives were held in June, 1937, and the name of the organization was changed to Employees' Representative Association. There is no record of amendments to the Plan having been adopted or voted upon either by the representatives or the employees.

The Board found that the respondents dominated and interfered with the formation and administration of the amended Plan in both the Gogebic and Zenith districts after 1937; that the Amended Plan was but a continuation of the original Plan without any fundamental changes necessary to comply with the provisions of the Act. The respondents deny that such finding is supported by evidence.

The evidence abundantly supports the findings of the Board. The officers of the Management instructed the employee representatives in the particulars in respect of which the Plan should be amended to eliminate company participation. The leaders of the employees under the original Plan continued as leaders under the amended Plan. The old Plan was not disestablished. No notice of disestablishment or of dissolution was ever given the employees. The old organization functioned until the representatives elected in June, 1937, supplanted it. The elections were held as usual upon the company premises and with company equipment. The amended organization clearly arose out of the old Plan. In such case decision of the controversy presented by respondents' contention is controlled by National Labor Relations Board v. Newport News Shipbuilding & Dry Dock Co., 308 U.S. 241, 60 S.Ct. 203, 84 L.Ed. 219. Although the circumstances in that case are different in some minor particulars from those present in the case at bar, the significant features in the two cases cannot be distinguished. The Supreme Court decision in the cited case was construed and applied to a similar situation by the Second Circuit Court of Appeals in Westinghouse Electric & Manufacturing Co. v. National Labor Relations Board, 2 Cir., 112 F.2d 657, 660, affirmed 312 U.S. 660, 61 S.Ct. 736, 85 L.Ed. 1108. In discussing the Newport News case, supra, the court said: "the circumstance which counted, as we understand it * * * was * * * that the employees at large had not been advised that the company was wholly indifferent whether they joined the new union, and that, as it might, and probably did, appear to be a successor of the old, the separation should have been made plain, and with it the discontinuance of any continued countenance from the employer." This essential requirement was not in any way complied with by the respondents. The existence of this fact, together with the other circumstances in evidence and with the fact also that there is no contradictory evidence in the record, clearly supports the finding of the Board. Cf. National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368.

In November, 1938, and January, 1939, the representatives in the Gogebic District were summoned to meetings at the Newport Mine office. The meetings were attended by the general manager of mine operations, the superintendent of mines, and attorneys for the respondents. The attorneys informed the representatives of the employees that charges had been filed with the Board alleging that the amended Plan was dominated by the respondents and that posting of notices disestablishing the amended Plan was under consideration. There was no admission that the amended Plan was illegal and no notices were posted.

In December, 1938, and January, 1939, an attorney for respondents informed the representatives at the Zenith Mine that charges had been filed with agents of the

Board alleging that the amended Plan was illegal, and he advised the representatives to employ counsel to determine whether these charges could be successfully combated.

The respondents did not disestablish the amended Plan at any of the mines in either district. No explanation of their position was made to the employees at the mines. The Board found that the representatives did not clearly understand the position of the respondents in regard to the amended Plan and that they left the meetings confused and feeling that "something was wrong" with their organizations and that the Board was demanding changes. Different measures were taken by the representatives at the several mines to meet the situation as they understood it.

At a meeting of the employees at the Cary Mine on November 28, 1938, it was voted to disband the Cary Employees' Association, and notice was sent by the secretary of the organization to the Management.

At the Zenith Mine the Representative Association was formally disbanded on January 20, 1939, and the Management was so notified.

After the disbanding of the amended Plan at the Cary and Zenith Mines the respondents in no way acknowledged that they had been informed of such disbanding and took no steps to disestablish the amended Plan at the mines by posting notice or otherwise.

At the time of the hearing in July, 1939, the Sunday Lake Plan of Employees' Representation had become dormant but had not been disbanded. The representatives had done nothing in 1938 and none was elected in 1939.

At the Newport Mine the Newport Mine Employees' Association was disbanded and reorganized as the Newport Mine Workers' Association in December, 1938, and January, 1939, under circumstances which support the finding of the Board that the new organization was but a continuation of the amended Plan under a different name and form. The new organization was promptly recognized as the bargaining agent for the employees.

In 1939 the Anvil-Palms Representation Group was disbanded and immediately reorganized under the name of Anvil-Palms Labor Union. The circumstances attending the reorganization fully sustain the finding of the Board that the Union is an outgrowth and continuation of the amended Plan. On April 10, 1939, the secretary of the Union notified the respondent Youngstown by letter that the men employed at the mine had formed a labor union known as Anvil-Palms Labor Union; that the Union represented a majority of the workers employed and demanded that the Union be given exclusive bargaining rights. The superintendent of the mine acknowledged receipt of the letter and told the president of the Union that it was receiving consideration. At the time of the hearing no answer had been given.

The finding and decision of the Board that at the Newport Mine and the Anvil-Palms Mine the organizations of the employees under new names were but continuations of their illegal predecessors dominated by respondents must be sustained. The old organizations were never disestablished, and nothing was said or done by respondents to make clear to the employees that the successor organizations were not mere reorganizations of the old ones with the entire approval of the respondents. The reorganizations were not brought about by the employees generally, but were effected solely by the same leaders who had dominated the Plan or the amended Plan of 1937. See National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307.

▆▆ The contention of respondents that the order is too broad must be sustained in two particulars. The amended Plan at the Cary Mine and at the Zenith Mine should not have been included in the order to disestablish. At the Cary Mine the organization had been formally disbanded November 28, 1938, leaving no successor. The Zenith Representative Association, successor of the Plan at the Zenith Mine, was formally disbanded January 20, 1939, leaving no successor. National Labor Relations Board v. Mall Tool Co., 7 Cir., 119 F.2d 700, 704.

▆▆ Paragraph 1(b) of the order is also too broad because it covers not only the labor organizations named in the complaint but it includes labor organizations generally, not only those in being but those not yet conceived. National Labor Relations Board v. Express Publishing Co.,

312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; National Labor Relations Board v. Tex-O-Kan Flour Mills Co., 5 Cir., 122 F.2d 433, 442.

Paragraph 1(a) of the order is modified by eliminating therefrom the words "Cary Employees' Association" and the words "Zenith Representative Association."

Paragraph 1(b) is modified to read substantially as follows: "In any manner interfering with, restraining, or coercing their employees in the exercise of their right to bargain collectively through representatives of their own choosing, and to engage in concerted activity for the purpose of collective bargaining, as guaranteed in § 7 of the National Labor Relations Act."

Paragraphs 4 and 5 of the order are entirely eliminated.

As so modified the order will be enforced.