## NATIONAL LABOR RELATIONS BOARD *v.* NEWPORT NEWS SHIPBUILDING & DRY DOCK CO.

No. 20.  Argued November 6, 7, 1939.—Decided December 4, 1939.

*Mr. Charles Fahy,* with whom *Solicitor General Jackson* and *Messrs. Charles A. Horsky, Robert B. Watts, Laurence A. Knapp, Mortimer B. Wolf,* and *A. Norman Somers* were on the brief, for petitioner.

*Mr. H. H. Rumble,* with whom *Messrs. Fred H. Skinner* and *John Marshall* were on the brief, for respondent.

*Mr. Frank A. Kearney,* with whom *Mr. Percy Carmel* was on the brief, for the Employees' Representative Committee, intervener, urging affirmance.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

In a case duly instituted and heard, the National Labor Relations Board issued an order,[1] pursuant to the provisions of § 10 (c)[2] of the National Labor Relations Act, requiring the respondent, Newport News Shipbuilding & Dry Dock Company: (1) to cease and desist from (a) dominating or otherwise interfering with the administration of the Employees' Representative Committee, a labor organization,[3] or the formation or administration of any other labor organization of its employes; (b) from

[1] 8 N. L. R. B. 866.

[2] 49 Stat. 449, 454; 29 U. S. C. Supp. IV, § 160 (c).

[3] The Committee was granted leave to intervene, produced evidence, and participated in the argument before the Board, and was heard in the court below and in this Court.

interfering with, restraining, or coercing its employes in the exercise of the right guaranteed them by § 7[4] of the Act. The order further required the company (2) to take affirmative action, namely: (a) to withdraw all recognition from the Committee as the representative of any of its employes for the purpose of dealing with the company concerning labor conditions and wages, and completely to disestablish the Committee as such representative; (b) to post copies of the order throughout the plant; (c) to maintain said notices for thirty days; and (d) to notify the Board's Regional Director of the steps taken to comply with the order.

The order was based upon findings that the respordent had dominated and interfered with the formation and administration of the Committee, had contributed to it financial and other support, and was still dominating and interfering with the Committee, contrary to § 8 (1) and (2)[5] of the Act.[6]

The Company petitioned the Circuit Court of Appeals for review. The Board answered praying that the court dismiss the company's petition and decree enforcement. The court held that the Board had jurisdiction of the cause, but that its holding that the company had dominated and interfered with the formation and administration of the Committee was without support in the evidence. The court decreed that § 1(a) and (b) and § 2 (b) (c) and (d) of the Board's order should be enforced but that § 2 (a), which required the withdrawal of recognition of the Committee and. its disestablishment as a representative of the employes, should be stricken from

---

[4] 49 Stat. 449, 452; 29 U. S. C. Supp. IV, § 157.

[5] 49 Stat. 449, 452; 29 U. S. C. Supp. IV, § 158.

[6] The complaint also charged that the respondent had discharged certain employes for union activity and had thus violated § 8 (3) of the Act but the Board dismissed this charge.

the order.  We granted certiorari because of asserted conflict with decisions of this court.[7]

The respondent does not press the claim advanced in the court below that the Board lacked jurisdiction.  The sole issue here joined is as to the propriety of that portion of the Board's order which constrained the respondent to withdraw recognition of the Committee and to disestablish it as the bargaining representative of the employes. Resolution of the issue requires that we determine whether the Board's ultimate finding of domination and interference by the employer has substantial support in the evidence.

The Board's subsidiary findings of fact are not the subject of serious controversy.  The respondent attacks the ultimate conclusion of fact as unjustified by the subsidiary findings and further contends that the conclusion could not have been reached had not the Board ignored and refused to find other relevant facts which were either stipulated or proved without contradiction.

The Board's findings were to the following effect: In 1927, in coöperation with its employes, the respondent put into effect a plan of employe representation known as "Representation of Employes."  The preamble of the plan stated that its purpose was to give employes a voice in respect of the conditions of their labor and to provide a procedure for the prevention and adjustment of future differences.  Under the plan the employes were to elect representatives each of whom was paid $100 per year for services as such.  No one holding a supervisory position was eligible to serve as a representative or to vote for a representative.  Administration of the plan was vested in certain joint committees each of which con-

---

[7] *National Labor Relations Board* v. *Pennsylvania Greyhound Lines,* 303 U. S. 261; *National Labor Relations Board* v. *Fansteel Metallurgical Corp.,* 306 U. S. 240.

sisted of five elected representatives and not more than five representatives chosen from amongst the employes by the management. There was provision for a Management's Representative whose function was "to keep the management in touch with the representatives and represent the management in negotiations with their officers and committees." . A provision calling for the arbitration of differences was to become operative only upon concurrence of the respondent's president.

Amendment of the plan could be made only by the affirmative vote of two-thirds of the full membership of the Joint Committee on Rules or of a majority of all the employes' representatives and all the representatives of the management, at an annual conference. The plan set forth that independence of action of elected representatives was guaranteed by permitting them to take questions of discrimination to any of the superior officers, to the Joint Committee, and to the president of the company. There was no provision for the payment of dues.

The original plan was revised in 1929, 1931, 1934, 1936, and 1937.

By the 1931 revision, which was not materially altered until 1937, a General Joint Committee was set up in lieu of several joint committees theretofore constituted, and two representatives were to be elected by the employes in each department while the respondent was to appoint an equal number of management representatives, a majority of each class of representatives constituting a quorum. The annual remuneration to be paid elected representatives by the company was reduced to $60.00. The secretary of the General Joint Committee was paid $5.00 monthly by the company. An Executive Committee was also established constituted of five elected employe representatives and five representatives of management.

Elections were arranged for by the management representatives but, in so far as possible, were conducted by the employes themselves.

A procedure was established for the adjustment of individual employe grievances, whereby, in event of failure of settlement, notice was to be given to the president of the company. Under the revised plan the General Joint Committee met monthly to take action upon matters presented by the Management Representative or by employe representatives or subcommittees; but finality of the action of the General Joint Committee was dependent upon approval by the respondent's president. Amendment of the plan, which could be accomplished by a two-thirds vote of the entire General Joint Committee, became effective when approved by the president of the company.

The last revision made in May 1937, after the validity of the National Labor Relations Act had been sustained by this court, originated in the General Joint Committee, one-half of whose members represented the interests of the respondent. The amended plan was referred to the Executive Committee, similarly constituted, and to the elected employe representatives, respectively. After announcement by the Management Representative that the revision was acceptable to the respondent it was adopted by the General Joint Committee. The personnel manager, and the general manager of the respondent, took part in the revision of the plan. The secretary of the Committee testified that this revision was undertaken in order to bring the plan within the letter, as well as within the spirit, of the Act.

The two principal changes made were the elimination of payment of compensation by the respondent to elected representatives of the employes and the substitution of an Employes' Representative Committee, composed solely of employe representatives elected by employes, for the

former General Joint Committee and the Joint Executive Committee. The revised plan provides that action of the Employes' Representative Committee "shall be final and become effective upon agreement by the company"; and, further, that any article of the plan may be amended by a vote of two-thirds of the entire membership of the committee; and "amendments shall be in effect at the time specified by the Employes' Representative Committee, unless disapproved by the company within fifteen days after their passage."

The grievance procedure permits the presentation of a grievance to the respondent's personnel manager, or its general manager, in the event no settlement has theretofore been effected.

Upon the basis of these findings the Board concluded that, from the inception of the plan in 1927 until its final revision in 1937, the respondent dominated, assisted, and interfered with the administration of the labor organization; and that the method followed for amendment of the plan in 1937, and the provisions of the final revision, left the company still in the position of dominating and interfering in the formulation and administration of the plan, contrary to the provisions of § 7 of the Act. The Board held that the Committee is, in the circumstances, incapable of serving the employes as their genuine representative for the purpose of collective bargaining.

The respondent criticises several of the findings as without support or contrary to uncontradicted evidence. We do not stop to consider these contentions, since, without such findings, there would still be a basis in the record for the Board's conclusions.

The principal contention of the respondent is that the Board ignored uncontradicted facts and refused to make findings respecting them. The Board replies that it did not ignore these facts, but omitted to find them because they were immaterial to the pivotal issues in the case. It

is uncontradicted that labor disputes have repeatedly been settled under the plan; that since 1927 no labor dispute has caused cessation of activities at the respondent's plant; that overwhelming majorities of the employes have participated in the election of representatives; that the company has never objected to its employes joining labor unions; that no discrimination has been practiced against them because of their membership in outside unions; and that neither officials nor superior employes not eligible to vote in the election of employes' representatives, have interfered, or attempted to interfere, or use any influence, in connection with the election of representatives.

Before the Board's decision and order had been promulgated a referendum was held at which a sweeping majority of the company's employes signified, by secret ballot, their satisfaction with the plan as revised in 1937 and their desire for its continuance. Counsel for the Committee requested the Board to certify these facts to the Circuit Court of Appeals as part of the record before the court. The Board, though not bound so to do, embodied these facts in a supplementary certificate. It now takes the position that the only proper way to bring these additional facts to the attention of the reviewing court would have been by application to the court to remand the cause for further findings, and as this was not done, the certificate was irregular and should not have been considered. We are unable to agree with this contention. We think the Circuit Court of Appeals cannot be convicted of error in accepting the Board's supplemental certificate.

The Board urges that, notwithstanding the facts on which the respondent relies, the structure of the Committee, under the 1937 plan, renders the organization incompetent to meet the requirements of the National Labor Relations Act; and further that, if its fundamental

law were free from defect, the history of its organization and administration would require that it be disestablished as the bargaining agency of the employes.

Prior to the adoption of the Wagner Act the plan did not run counter to any federal law, either in conception or administration. The respondent, however, concedes that sundry features of the plan, as then formulated, conflict with the provisions of the statute. Both employer and employes so recognized when they undertook the revision of 1937 for the purpose of bringing the plan within the spirit and the letter of the Act.

The Board has concluded that the provisions embodied in the final revision, whereby action of the Committee requires, for its effectiveness, the agreement of the company, and whereby amendment of the plan can become effective only if the company fails to signify its disapproval within fifteen days of adoption, still give the respondent such power of control that the plan is in the teeth of the expressed policy and the specific prohibitions of the Act. The respondent argues that these provisions affect only the company and not the employes; that, in collective bargaining, there is always reserved to the employer the right to qualify or to reject the propositions advanced by the employes. Whatever may be said of the first mentioned provision, this explanation will not hold for the second. The plan may not be amended if the company disapproves the amendment. Such control of the form and structure of an employe organization  deprives the employes of the complete freedom of action guaranteed to them by the Act, and justifies an order such as was here entered. The court below, in its opinion, states it was advised in a brief after the hearing in that court, that the plan had been amended by striking out the provisions in question. It concludes, therefore, that their previous existence is immaterial. The statute expressly deprives the reviewing court of power to con-

sider facts thus brought to its attention. The case must be heard on the record as certified by the Board. The appropriate procedure to add facts to the record as certified is prescribed in § 10 (e) of the Act.

But we think that if the record disclosed such an alteration of the plan, the order of the Board could not be held erroneous. The Board held that, where an organization has existed for ten years and has functioned in the way that the Committee has functioned, with a joint control vested in management and men, the effects of the long practice cannot be eliminated and the employes rendered entirely free to act upon their own initiative without the complete disestablishment of the plan. On the record as made we cannot say this was error.

While the men are free to adopt any form of organization and representation whether purely local or connected with a national body, their purpose so to do may be obstructed by the existence and recognition by the management of an old plan or organization the original structure or operation of which was not in accordance with the provisions of the law. Sec. 10(c) was not intended to give the Board power of punishment or retribution for past wrongs or errors. Action under that section must be limited to the effectuation of the policies of the Act. One of these is that the employes shall be free to choose such form of organization as they wish.

As pointed out in *National Labor Relations Board* v. *Pennsylvania Greyhound Lines,* 303 U. S. 261, disestablishment of a bargaining unit previously dominated by the employer may be the only effective way of wiping the slate clean and affording the employes an opportunity to start afresh in organizing for the adjustment of their relations with the employer. Compare *National Labor Relations Board* v. *Fansteel Metallurgical Corp.,* 306 U. S. 240, 262.

The court below agreed with the respondent that, as the Committee had operated to the apparent satisfaction of the employes; as serious labor disputes had not occurred during its existence; and as the men at an election held under the auspices of the Committee had signified their desire for its continuance, it would be a proper medium and one which the employer might continue to recognize for the adjustment of labor disputes. The difficulty with the position is that the provisions of the statute preclude such a disposition of the case. The law provides that an employe organization shall be free from interference or dominance by the employer. We cannot say that, upon the uncontradicted facts, the Board erred in its conclusion that the purpose of the law could not be attained without complete disestablishment of the existing organization which had been dominated and controlled to a greater or less extent by the respondent. In applying the statutory test of independence it is immaterial that the plan had in fact not engendered, or indeed had obviated, serious labor disputes in the past, or that any company interference in the administration of the plan had been incidental rather than fundamental and with good motives. It was for Congress to determine whether, as a matter of policy, such a plan should be permitted to continue in force. We think the statute plainly evinces a contrary purpose, and that the Board's conclusions are in accord with that purpose.

The decree must be reversed and the cause remanded for further proceedings in conformity to this opinion.

*Reversed.*