## NATIONAL LABOR RELATIONS BOARD v. CRYSTAL SPRING FINISHING CO.

### No. 3597.

Circuit Court of Appeals, First Circuit.

Jan. 7, 1941.

670

Edward Schneider, of Boston, Mass. (Charles Fahy, Robert B. Watts, Laurence A. Knapp, Joseph Friedman, and Frank Donner, all of Washington, D. C., on the brief), for the Board.

Respondent submitting on the record and brief by leave of court.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

PETERS, District Judge.

This case is before the court on petition of the National Labor Relations Board for enforcement of an order issued against the respondent under Section 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 160(c). The respondent is a Massachusetts corporation doing business at Freetown, in that State, where certain unfair labor practices are alleged to have occurred.

Upon charges made by the United Textile Workers of America, a labor union, the Board issued its complaint against the respondent alleging conduct constituting unfair labor practices within the meaning of Section 8(1), (2), (3), and (5) of the Act, 29 U.S.C.A. § 158 (1–3, 5). The respondent did not file an answer but appeared and participated in the hearing.

The Trial Examiner filed his report to which the respondent filed exceptions. The Board rendered its decision with findings of fact, conclusions of law, and an order to cease and desist from certain practices, and to take certain affirmative action.

From findings of fact which are supported by substantial evidence, largely undisputed, it appears that the business of the respondent is that of bleaching, dyeing, mercerizing and finishing textile fabrics in its plant where it employs between 80 and 90 men; that the plant finishes between 2,500,000 and 3,000,000 yards of cloth per month. Respondent's customers are converters, so-called, who have and retain title to the goods sent to the respondent's plant to be processed. Respondent's customers are about twelve in number, of whom eight are located outside the state. Twenty per cent of the cloth processed is shipped into the plant from outside the state. Twenty-five per cent of all the goods processed is sent directly to various points outside the state. A batch of unfinished goods comes into the plant and the finished cloth goes out in a period of about one week. Respondent has no transportation facilities of its own and no control over the method by which the materials are shipped into or out of its plant, which is largely by truck. The flow of goods in and out of the plant is fairly constant. An officer of the respondent testified that "these customers in New York have their special trucking concerns that they give that business to, and they inform them to call on us and make arrangements to take their merchandise to points of destination. When they start they know what time to come up there and call for the goods. We usually have a truck in at three and one at four, from the different trucking concerns, to take care of the trucking for the

customer." The trucking was largely handled by interstate transportation lines.

It is claimed in behalf of the respondent that the National Labor Relations Act does not apply to this situation; that its attempted application is unconstitutional and that the Board has no jurisdiction, because the respondent is merely a local manufacturer and not engaged in interstate commerce.

The two cases cited by counsel for respondent in support of his general proposition that the Act cannot be applied to this respondent in the conduct of its business— Foster Bros. Mfg. Co. v. National Labor Relations Board, 4 Cir., 85 F.2d 984, and Bethlehem Shipbuilding Corp. v. Meyers, D.C., 15 F.Supp. 915, affirmed 1 Cir., 88 F.2d 154—are no longer authority. The Foster Case, decided in 1936, ceased to be an authority after the decision in 1937 of the case of National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352.

The Bethlehem Shipbuilding Case cannot be relied upon by respondent to support his contention since the decision in Bethlehem Shipbuilding Corp. v. National Labor Relations Board, 1 Cir., 114 F.2d 930. See also Myers et al. v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954.

The point raised by respondent is also directly covered by the decision in National Labor Relations Board v. Fainblatt et al., 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014, which decides that the Act is applicable to employers not themselves engaged in interstate commerce who are engaged in a relatively small business of processing materials which are regularly transmitted to them by the owners through the channels of interstate commerce, and after the processing are returned to the owner's agent at the factory and by him shipped to interstate destinations—the same situation which is present here to a considerable extent. It appears from the evidence as to the respondent's business that a substantial amount of interstate commerce is involved which would be injuriously affected by a strike of the workmen. It is unimportant that the respondent's finishing operations were performed upon goods belonging to others who furnished their own transportation. National Labor Relations Board v. Bradford Dyeing Association, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226.

The unfair labor practices found by the Board were, (a) the discharge of an employee, one Manuel Rapoza, of Fall River, and the refusal to reinstate him because of union membership and activities, (b) refusal to bargain collectively with the Union which was the duly designated bargaining unit of the respondent's employees; (c) the locking out of and refusal to reinstate ten employees because of union activities, for the purpose of discouraging membership in the Union and to avoid collective bargaining with it, and (d) domination and interference with the formation of a labor organization.

By such conduct the respondent was alleged to have engaged in unfair labor practices affecting commerce within the meaning of Section 8 (1), (2), (3) and (5) and Section 2 (6) and (7) of the Act.

The order of the Board was to cease and desist from the unfair labor practices mentioned and to take certain affirmative action which the Board found would effectuate the policies of the Act, viz.: reinstate the employees discriminated against without prejudice to their seniority or other rights previously enjoyed by them; make whole certain named employees for any loss in pay suffered by reason of the respondent's discriminatory conduct, by payment to each of them of a sum equal to that which he would have normally earned as wages "from December 1, 1936, the date of the respondent's discriminatory conduct, to the date of the offer of reinstatement, less his net earnings during such period; deducting, however, from the amount otherwise due to each of said employees, moneys received by said employees during said period for work performed upon Federal, State, county, municipal or other work-relief projects and pay over the amount so deducted to the appropriate fiscal agency of the Federal, State, county, municipal or other government or governments which supplied the funds for said work-relief projects"; make whole two employees for their losses by the lock-out and payment to them of a sum equal to that which they would have earned from the date of the lock-out to the date of their refusal to accept the offer of reinstatement, with the same provisions as above as to deducting moneys received from public sources which were to be repaid. Respondent was also ordered to bargain collectively

with the Union as the exclusive representative of the employees and to refrain from interfering with the employees in their right to bargain collectively through representatives of their own choosing. Appropriate notices were ordered posted.

■ Counsel for respondent urges that there was insufficient evidence to support the finding of the Board as to unfair practices, but not, apparently, with much confidence, as he gives the result of his study of the evidence in two or three short paragraphs of his brief without reference to the record.

An examination of the record shows that in the latter part of November, 1936, a majority of the employees of the respondent had affiliated themselves with the textile workers union and requested an opportunity to bargain as to an increase in wages. Rapoza was the most active of the employees in promoting the organization of a local branch of this Union. Requests to bargain with the local Union, made on November 30 and December 1, were evaded and were without definite result. On the following day Rapoza was discharged. Conflicting reasons were given by the management for the discharge of Rapoza, but it is very clear that he was laid off because of his union activity. The next day after some conversation in regard to the discharge of Rapoza and after an attempt of the management of respondent to induce a group of employees to abandon their position, the management announced that the plant would be shut down and the business liquidated. At the end of the day, being three days before the regular pay day, the employees were all paid off and informed that the respondent was going out of business. The next day, however, the plant was reopened and a group of employees was hired consisting of many of the former employees, but omitting ten union members who were among those discharged the previous day when all were paid off.

On December 1 the respondent made suggestions as to the formation of a company union which did not meet with a favorable response. On December 7 the respondent conducted an election at the plant which indicated that the Union was not then favored by a majority of the employees.

The evidence is sufficient to sustain the finding of the Board that, prior to the

acts which it found to be unfair labor practices, a majority of the production employees had joined the Union, and designated it as their representative.

The Board was justified in its conclusion that the announcement of a permanent shut-down and payment of the employees three days before the regular pay day was part of an effort by the respondent to discourage union activity, to an extent prohibited by the Act.

The record shows substantial foundation for the conclusion of the Board that the acts of the respondent in connection with the Union constituted unfair labor practices, as defined by the Act, in the respects specified by the Board.

Under the circumstances, it is settled that, with the exception of the payments directed to be made to relief agencies, the order of the Board is proper to effectuate the purposes of the Act. National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F.2d 681; National Labor Relations Board v. Bradford Dyeing Association, supra; National Labor Relations Board v. Colten, 6 Cir., 105 F.2d 179; National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 94 F.2d 862; National Labor Relations Board v. Newport News Shipbuilding Co., 308 U.S. 241, 60 S.Ct. 203, 84 L.Ed. 219; International Association of Machinists v. National Labor Relations Board, 61 S.Ct. 83, 85 L.Ed. —, November 12, 1940.

■ In Paragraphs 2(b) and 2(c) of the Board's order reimbursement to certain employees was ordered less net earnings received, "deducting, however, from the amount otherwise due to each of said employees moneys received by said employees during said period for work performed upon Federal, State, county, municipal or other work-relief projects, and pay over the amounts so deducted to the appropriate fiscal agency of the Federal, State, county, municipal or other government or governments which supplied the funds for said work-relief projects."

So much of the order above quoted as appears in Paragraphs 2(b) and 2(c) of the order cannot be enforced. National Labor Relations Board v. Waumbec Mills, 1 Cir., 114 F.2d 226; Republic Steel Corporation v. National Labor Relations Board, 61 S.Ct. 77, 85 L.Ed. —, November 12, 1940.

A decree will be entered enforcing the order of the Board omitting the language referred to in Paragraphs 2(b) and 2(c).