**WILSON & CO., Inc., v. NATIONAL LABOR RELATIONS BOARD.**

No. 7669.

Circuit Court of Appeals, Seventh Circuit.

Feb. 19, 1942.

Rehearing Denied March 25, 1942.

---

J. D. Cooney, R. C. Winkler, and Paul Ware, all of Chicago, Ill., for petitioner.

Robert B. Watts, of Washington, D. C., I. S. Dorfman, of Chicago, Ill., and N. Barr Miller, of Washington, D. C., Laurence A. Knapp, Associate Gen. Counsel, Ernest A. Gross, Asst. Gen. Counsel, Frank Donner, and Margaret M. Farmer, all of Washington, D. C., for respondent.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

These proceedings are before us upon the petition of the employer to set aside an order of the N.L.R.B. and also upon the petition of the N.L.R.B. for an enforcement of its order.

Petitioner is a Delaware corporation, having its principal place of business in Chicago, Illinois. It is engaged in the meat packing business, which means that it purchases and slaughters livestock, processes meat products and their byproducts, and sells and distributes the finished commodities.

Our controversy deals with a labor dispute in petitioner's packing house at Chicago. As to it, the evidence shows that 85% of its products are shipped to points outside the city. Its business in a single month was $10,000,000. Its employees in Chicago number 3600.

■ The conclusion is inescapable that it is engaged in interstate commerce, and its employees' relations fall within the jurisdiction of the National Labor Relations Act, Sec. 8(1), (2), 29 U.S.C.A. § 158(1, 2). Petitioner, in fact, raises no question of the applicability of the Act to the controversy here involved.

The Board found that petitioner dominated and interfered with the formation and administration of, and contributed support to, the Joint Representative Committee Plan and the Joint Representative Committee established under such plan, which for years covered petitioner's and employees' method of handling labor problems and settling labor disputes. The Board also found that petitioner dominated and interfered with the formation and administration of the Wilson Employees' Representation Plan,[1] and the Employees Representative Committee[1] established thereunder, in violation of Section 8(1), (2).

Its order, in addition to requiring petitioner to cease and desist from the unfair labor practices which it found to exist, ordered petitioner to refuse to recognize the Joint Representative Committee Plan and the Joint Representative Committee as collective bargaining representatives of its employees, to disestablish the Wilson Employees' Representation Plan and the Employees' Representative Committee as such representative, and to post appropriate notice of the substance of the order in its plant.

This controversy and its disposition turn upon the existence of evidence sufficient to support the Board's finding of unfair labor practices. This, in turn, depends upon the merits of the charge, and the validity of the finding, that petitioner dictated the Joint Representative Committee Plan, financed it, and dominated the Joint Representative Committee. The same is said of the Wilson Employees' Representation Plan and the Employees' Representative Committee.

We are convinced that there is evidentiary support for the finding of the Board on this issue. We must therefore accept it.

Petitioner's counsel with an earnestness which evidences sincere conviction, argues that the finding is false and that never has petitioner dominated, or sought to dominate, the employees' independently selected organization. Nor did it endeavor to dictate, or formulate, the policy of either plan. It asserts that the plan resulted from a mutual desire, entertained by both employer and employees, to improve labor conditions and labor relations between employer and employee. The Committees were selected to protect the employees' rights under the Plans and to study, present, and urge the adoption of changes which might benefit the employees both in matters of wage compensation and hours of service and working conditions.

Petitioner argues that more fruitful results are obtained through the cooperation of employer and employee than through labor wars, and that such cooperation in plans and proposed changes for better working conditions was petitioner's sole object, and it did not evidence domination or interference. Asserting in addition that such cooperation attained through meetings and discussions was conducive to the creation of more friendly and cordial relations between the employer and employee, it was hoped that the strike method of settling labor disputes would thereby be lessened.

■ While the argument, thus made, must, in the abstract, be accepted as sound, the more specific question concerns the record proof in this case. In other words, the argument which counsel for petitioner has made, was more properly directed to the N.L.R.B., which is the fact-finding body, whose findings we cannot review, save to ascertain whether there is substantial evidence to support them.

■ We have conceived it to be our duty to study the evidence in these labor cases for the purpose of ascertaining the existence or absence of substantial proof to support the findings of the Board. In making this study, we have sifted the evidence and endeavored to analyze it as we do in the ordinary civil suits, for the sole purpose of ascertaining the existence

---

[1] Later developed method and organization for amicable adjustment of labor complaints, etc.

of substantial evidence to support the Board's findings.[2]

We have recognized (or tried to) that findings must be sustained, even when they are contrary to the great weight of the evidence, and we have ignored, or at least endeavored to ignore, the shocking injustices which such findings, opposed to the overwhelming weight of the evidence, produce. We must confess that at times we have apparently failed to recognize that evidence which would not appeal to any normal, rational appraiser of the truth, may yet fall within the field of "some evidence."[3] On the assumption that such evidence would not be sufficient to sustain a finding in an ordinary civil suit, we have rejected it. We have at times set aside the findings of the Board, but only for the same reason that we have set aside findings of fact by the trial court and by special masters, or referees in bankruptcy, to wit, when the findings were so overwhelmingly opposed by the evidence as to require it. Our conclusions have not met the approval of the Supreme Court to whose superior judgment we bow.

■ We are fully convinced that there is substantial evidence in this case, in view of the pronouncements of the Supreme Court, which supports the view taken by the Board. In other words, there is evidence which sustains the finding that both local organizations had their origin and creation in petitioner's efforts; that both were somewhat dominated by petitioner and financed by it. Neither committee was an entirely free, uncontrolled agent, and neither was qualified to serve, adequately, the employees, as their collective bargaining agent.

We see no justification for setting forth in detail the large volume of evidence, much of which is admittedly contradicted, and much of which involves debatable deductions and inferences from established facts.

■ This, leaves nothing but the question of the propriety of the order which has the approval of numerous Supreme Court decisions. National Labor Relations Board v. Newport News Shipbuilding & Dry Dock Company, 308 U.S. 241, 60 S.Ct. 203, 84 L.Ed. 219; National Labor Relations Board · v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

■ The Board was justified, in our opinion, in entering the order directing petitioner to cease and desist from the unfair labor practices, provided we accept, as we are required to do, the finding of the Board as to said unfair labor practices. Likewise, there is no valid objection to the Board's order which directed petitioner to refuse to recognize the Joint Representative Committee Plan and the Joint Representative Committee as collective bargaining representatives, in view of the additional finding by the Board that these organizations were dominated by the petitioner and their "formation and administration were contributed to and interfered with" by the petitioner. Finally there can be no objection to an order disestablishing the Wilson Employees' Representation Plan and the Employees' Representative Committee, if we assume, as the Board found, that the petitioner dominated their formation, interfered with the administration of said groups, and contributed to their support. The requirement to post an appropriate notice was the usual incident to such an order.

The petition of petitioner is denied.

The petition of the National Labor Relations Board for an enforcement order must be, and is, granted.

[2] National Labor Relations Board v. Gutmann & Co., 7 Cir., 121 F.2d 756; Foote Bros. Gear & Machine Co. v. National Labor Relations Board, 7 Cir., 114 F.2d 611; National Labor Relations Board v. Aladdin Industries, 7 Cir., 125 F.2d 377, decided January 16, 1942; National Labor Relations Board v. Automotive Maintenance Co., 7 Cir., 116 F.2d 350.

[3] National Labor Relations Board v. Automotive Maintenance Mach. Co., 62 S.Ct. 608, 86 L.Ed. —, decided by Supreme Court, Feb. 16, 1942; Foote Bros. Gear & Machine Corp. v. National Labor Relations Board, 311 U.S. 620, 61 S. Ct. 318, 85 L.Ed. 394; Link-Belt Co. v. National Labor Relations Board, 311 U. S. 584, 61 S.Ct. 358, 85 L.Ed. 368.