## NATIONAL LABOR RELATIONS BOARD v. IDAHO REFINING CO.

### No. 10583.

Circuit Court of Appeals, Ninth Circuit.

June 22, 1944.

Alvin J. Rockwell, Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and William J. Isaacson, Isadore Greenberg, and Charles F. McErlean, Attys., N. L. R. B., all of Washington, D. C., for petitioner.

Henry D. Moyle and David L. McKay, both of Salt Lake City, Utah, and A. L. Merrill and R. D. Merrill, both of Pocatello, Idaho, for respondent.

Before STEPHENS and HEALY, Circuit Judges, and FEE, District Judge.

STEPHENS, Circuit Judge.

Idaho Refining Company, respondent here, is a Nevada corporation, and its principal place of business is Pocatello, Idaho. It refines, transports and distributes petroleum and petroleum products. It owns Covey Gas and Oil Company and controls Idaho Gas and Oil Company. During the period in which the events pertinent to this proceeding were happening respondent had shipped to it in Idaho from other states, and it shipped from Idaho to other states, substantial amounts of material. It is engaged in interstate commerce, and it is subject to the orders of the National Labor Relations Board. The National Labor Relations Board will herein be designated as the Board, and the National Labor Relations Act, which provides for the Board and contains the references to the Act herein made, will be designated as the Act. 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

After two charges had been filed with the Board and the Board had issued its consolidated complaint, and after the filing of respondent's denial of all or any unfair labor practices, a hearing was had, and after submission of the case the Board issued its order. Briefly, the order, under authority of § 10(c) of the Act, 29 U.S.C.A. § 160(c), commands respondent—

(a) To cease and desist from dominating or interfering with the administration of the Idaho Refining Company Employees' Benefit and Labor Association, or with the formation or administration of any other labor organization of its employees, and from giving financial or other support to any labor organization of its employees;

(b) From reorganizing or dealing with Idaho Refining Company Employees' Benefit and Labor Association as representative of any of respondent's employees upon any matter coming within the jurisdiction of the Board;

(c) From performing or giving effect to the contract of June 1, 1942, between it and the association above named or relating to a renewal, extension or change of such contract or to any other agreement of any kind with the association within the scope of the Board's jurisdiction;

(d) From discouraging membership of its employees in Teamsters, Chauffeurs, Warehousemen and Helpers, Local No. 983 or International Association of Machinists, Local No. 198, affiliates of A. F. of L., or any other labor organization "by discharging or refusing to reinstate, or in any other manner discriminating in regard to their hire or tenure of employment";

(e) From in any other manner interfering with any of its employees' rights guaranteed by § 7 of the Act.

To take affirmative action as follows:

(a) Withdraw entirely from recognizing or dealing with Idaho Refining Company Employees' Benefit and Labor Association as to any matters within the jurisdiction of the Board and disestablish the association as employee representative;

(b) Offer immediate and full reinstatement to certain hereinafter designated employees in their former or substantially equivalent positions without prejudice to their seniority and other rights and privileges;

(c) Make whole certain reinstated employees;

(d) Make whole R. E. Miller [R. E. Miller was one of the men discharged but (b) does not apply to him because he has been reinstated in employment but has not been made whole];

(e) Post notices of compliance;

(f) Notify the Regional Director of action taken under the order.

The Board petitions this court to order enforcement, and respondent resists the petition.

This case presents the situation, not unusual in Board order enforcement cases, in which the employer earnestly believes in his case, and asks us to consider the evidence as a whole and decide that it does not support the findings of the Board.

The employer is remotely aware of the fact that we cannot weigh the evidence and that our only function is to decide whether or not the Board has acted within the law, including, as this function does, the decision as to whether there is any supporting evidence for the findings. Section 10(e) of the Act, 29 U.S.C.A. § 160(e): "The findings of the Board as to the facts, if supported by evidence, shall be conclusive." The employer, however, argues that all of the evidence put together produces a whole which, reasonably viewed, does not show unfair labor practices. Usually he means that the evidence does not show intention to be unfair, but he understands the word "unfair" in its common meaning and not in its meaning as defined in the labor act. Section 8 of the Act, 29 U.S.C.A. § 158: "It shall be an unfair labor practice for an employer—(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 157 of this title." Section 7 of the Act, 29 U.S.C.A. § 157: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

■ While there may be cases in which unfair labor practices have been found by the Board as to which the overall viewpoint would demonstrate that no unfair practice is present, this case is not one of them. For each violation of the Act found we must lend our order of enforcement if there is evidence from which an interference can be drawn in support of the finding. N. L. R. B. v. J. G. Boswell Co., 9 Cir., 136 F.2d 585-589.

■ Wherever in this opinion we state evidence as fact, we do it because in the support of the Board's findings, in general, we are bound to assume the supporting evidence as true.

■ The first point made by the Board in its opening brief refers to the violation of § 8(2) of the Act, 29 U.S.C.A. § 158 (2), wherein it is made an unfair practice to dominate or interfere with the formation or administration of any labor organization or to contribute financial or other support to it. The violation consists of respondent's relations with the Idaho Refining Company Employees' Benefit and Labor Association, a company union.

There is evidence that officials and supervisors of the Covey and Idaho companies were organization members of the Association, and some of them held offices in that organization. N. L. R. B. v. Boswell, supra, 136 F.2d at page 593. Respondent permitted the Association's notices to be distributed during working hours and the posting of such notices on the plant bulletin boards; permitted the organizational meeting and subsequent meetings to be held . on company premises; gave soft drink and tobacco and other sales concessions to the Association, adjusting the proceeds therefrom with the Association; and deducted Association dues from employer pay checks. Virginia Electric & Power Co. v. N. L. R. B., 4 Cir., 132 F.2d 390-395. Respondent executed with the Association a one-year contract as to wages and later renewed it without ascertaining whether or not the Association represented a majority of employees. There is evidence to the effect that in 1939 a majority of the employees voted to remain within the Association. There is evidence of other facts pertinent to the issue, but[1] it seems no more need be said upon the subject to show that there was evidence of favoritism to and domination of the Association by respondent. It was held in N. L. R. B. v. Newport News Shipbuilding & Dry Dock Co., 308 U.S. 241, 248-250, 60 S.Ct. 203, 84 L.Ed. 219, that the fact that a majority of employees were favorable to a company union and to the continuance of a mutual agreement, whereby the employees are not free to act under the guaranteed rights contained in the Act, is not within the provisions of the Act; and the Board's order to disestablish the company union was held valid. We quote from the opinion, 308 U.S. at page 250, 60 S.Ct. at page 208, 84 L.Ed. 219: "* * * The Board held that, where an organization has existed for ten years and has functioned in the way that the Committee has functioned, with a joint control vested in management and men, the effects of the long practice cannot be eliminated and the employes rendered entirely free to act upon their own initiative without the complete disestablishment of the plan. On the record as made we cannot say this was error." The evidence in the instant case is sufficient to support a finding that the right of the employees to organize independently was interfered with by the company. Thus § 8(2) and (1) of the Act were violated. There was evidence justifying the disestablishment of the Association.

### Discharge of Pocatello Drivers.

In July, 1941, some of the truck drivers decided to organize independent of respondent, and eighteen of the nineteen drivers formed and joined a union affiliated with A. F. of L. In November following the organization of the union a union committee was authorized to negotiate with respondent. There is evidence that in the interim respondent attempted to discourage the organizational efforts. The company general manager informed a driver transferring to Pocatello that his union button would do him no good, and if the Pocatello drivers joined the union, he would "can everyone of them." In November the Idaho Refining Company's superintendent of transportation told a Pocatello driver that he had heard the drivers had joined the union and asked as to its purposes. The next day the union member drivers were discharged. The day following, a job applicant was asked by the general manager as to his union affiliations, saying "We have our own union * * *." Much the same conversation took place between another company official and a job applicant. Superintendent Rice told one of the new men he had a job as long as he went ahead and did his work, that the discharged men (referring to them by a foul epithet) "are never going to drive out here again." There is much other pertinent evidence to the same general effect.

Respondent denies that the men were discharged because of their union membership or activities, and contends that they were discharged because they had been engaged in driving accidents, and that the insurance company carrying the company's accident insurance was threatening to or did withdraw their insurance from the company, and introduced evidence in support of this claim. It is pertinent to mention that nine of the eighteen men discharged had never been in an accident. But the Board did not believe this explanation and accordingly found that the discharge was because of the men's unionism. The order of reinstatement, however, omits several of the discharged men who had been in numerous and serious accidents.

---

[1] Teamsters, Chauffeurs, Warehousemen and Helpers, Local No. 983, affiliated with A. F. of L.

There thus appears to be competent and substantial evidence to the effect that § 8(1) and (3) of the Act, 29 U.S.C.A. § 158(1) and (3), has been violated. Section 8(1) and (3) of the Act, 29 U.S.C.A. § 158(1) and (3): "It shall be an unfair labor practice for an employer—(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title. * * * (3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *."

### Discharge of Archibald.

On the same day of the mass discharge Archibald, a mechanic in the employ of respondent at Pocatello, was discharged, the reason being given that he was absent too much. There was evidence of his drinking. Archibald, it seems, had not absented himself more often than others, and he was an active union advocate, leading in the organization of the drivers although his job did not entitle him to become a member of the union with which the drivers affiliated. In the fall of 1941 Archibald joined the International Association of Machinists, Local No. 198, and was active in the organization of respondent's mechanics. After the organization of the drivers in the A. F. of L. union Archibald continued active in union advocacy and affairs. The evidence is ample to support the Board's conclusion that Archibald was discharged because of his union activity.

### Douglas Discharge.

Douglas was a truck driver of respondent at Baker, Oregon, and was transferred to Pocatello in September, 1941. In September he joined the union. In a short time he was transferred back to Baker and was discharged November 20, 1941.

Respondent contends that Douglas was discharged because of being involved in an accident at Weiser, Idaho, October 16, 1941. He was informed by respondent officials later, however, that "he was fired for the same reason as the rest of the drivers were, on account of the insurance was cancelled."

The Board weighed the evidence and thought the several weeks intervening between the time of the Weiser accident and the discharge, indicated that that event was not the true cause of the discharge and concluded that his union affiliation was the real cause. This conclusion cannot be disturbed by us.

We have covered all points raised by appellant and find none of them meritorious. The Board's order is ordered enforced.