**UTAH COPPER CO. et al. v. NATIONAL LABOR RELATIONS BOARD (INDEPENDENT ASS'N OF MILL WORKERS et al., Interveners).**

No. 2722.

Circuit Court of Appeals, Tenth Circuit.

Dec. 6, 1943.

Rehearing Denied Feb. 8, 1944.

See, also, 136 F.2d 485.

C. C. Parsons, of Salt Lake City, Utah (W. M. McCrea and A. D. Moffat, both of Salt Lake City, Utah, on the brief), for petitioners.

Helen F. Humphrey, of Washington, D. C. (Robert B. Watts, Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and David Findling and William F. Scharnikow, all of Washington, D. C., on the brief), for respondent.

R. Verne McCullough, of Salt Lake City, Utah, for intervener Independent Ass'n of Mill Workers.

Elliott W. Evans, of Bingham Canyon, Utah, for intervener Independent Ass'n of Mine Workers.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Kennecott Copper Corporation owns a large open-pit mine in Bingham Canyon, Utah, and two reduction mills near Garfield, Utah. The mine and the mills are about seventeen miles apart. Utah Copper Company is a wholly owned subsidiary of Kennecott and is engaged in the operation of the mine and the mills. In view of the relationship existing between the two Companies, reference will be made to them in the singular. The Company mines the ore, transports it to the mills, reduces it to concentrates, causes it to be smeltered and transported to refineries located in other states for further treatment, and sells the refined products in the markets of the world. At the time of the hearing in this proceeding, there were about 2,300 employees at the mine and about 2,000 at the mills. Employees' General Committee is an unaffiliated labor organization at the mine; The Independent Association of Mine Workers is an unaffiliated labor organization, admitting to membership employees working at the mine; The Independent Association of Mill Workers is an unaffiliated labor organization, admitting to membership employees working at the mills; and International Union of Mine, Mill and Smelter Workers is a labor organization affiliated with the Congress of Industrial Organizations, admitting to membership employees at both the mine and the mills. The National Labor Relations Board issued its complaint and amended complaint in which it was charged that the Company had engaged in unfair labor practices at the mine and the mills. The Company answered, and the Mine Association and the Mill Association intervened, aligning themselves with the Company. A trial examiner conducted extended hearings and submitted an intermediate report containing findings of fact, conclusions of law, and recom

mendations. With exceptions which have no material bearing here, the Board adopted the findings and conclusions, and entered its order in conventional form requiring the Company inter alia to cease and desist from dominating or interfering with the administration of Employees' General Committee, Independent Association of Mine Workers, and Independent Association of Mill Workers; cease and desist from recognizing any of the three organizations as the bargaining representative of its employees; withdraw recognition from and disestablish such organizations; and post notices of its compliance. The Company, the Mine Association, and the Mill Association separately seek the vacation of the order, and the Board seeks its enforcement.

The findings of the Board that the Company had engaged in unfair labor practices at the mine and the mills are challenged on the ground that they are not supported by substantial evidence. Section 10(e) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 160(e), provides among other things that the findings of fact of the Board shall be conclusive on review, if supported by evidence. The Congress thus entrusted to the Board the function of passing upon the credibility of witnesses, determining the weight to be given to their testimony, drawing inferences from the facts and circumstances, and resolving conflicts in evidence. Where the findings are supported by substantial evidence, they are conclusive on review. National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; National Labor Relations Board v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348; National Labor Relations Board v. Nevada Consol. Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305; National Labor Relations Board v. Denver Tent and Awning Co., 10 Cir., 138 F.2d 410; Harp v. National Labor Relations Board, 10 Cir., 138 F.2d 546. And where a conclusion may reasonably be drawn from the evidence, it cannot be disturbed on review merely because the court would have drawn a different inference. National Labor Relations Board v. Southern Bell Telephone & Telegraph Co., 319 U.S. 50, 63 S.Ct. 905.

Substantial evidence, within the purview of the Act, means more than a mere scintilla. It means relevant evidence of the kind and quantum which a reasonable mind might accept as an adequate basis for a conclusion. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660; Harp v. National Labor Relations Board, supra.

In general, the evidence related to the facts and circumstances surrounding and attending the formation of the Mine Association and the Mill Association soon after the Act became effective, to statements and comments made to different employees concerning labor organizations, to urging some employees to join one and urging others to withdraw from another, to transfers of employees, to the handling of grievances on Company time, to the use of Company owned property as an office for the transaction of the business of the Mill Association, to the use of a duplicating machine owned by the Company in connection with the business of the Mill Association, and to the furnishing and use of bulletin boards. It would not contribute to any useful purpose to review the evidence in detail as no two cases of this kind are identical in respect of facts. It is enough to say that the evidence and the inferences fairly to be drawn from it presented issues of fact, but they were for the Board, and the Board resolved them. The material findings are adequately supported by substantial evidence and they are therefore conclusive here. National Labor Relations Board v. Link-Belt Co., supra; National Labor Relations Board v. Virginia Electric & Power Co., supra; National Labor Relations Board v. Nevada Consol. Copper Corp., supra; National Labor Relations Board v. Southern Bell Telephone & Telegraph Co., supra; National Labor Relations Board v. Denver Tent and Awning Co., supra; Harp v. National Labor Relations Board, supra.

The Act does not enjoin an employer from merely expressing his views in respect of labor policies or problems. National Labor Relations Board v. Virginia Electric & Power Co., supra. And isolated or casual expressions of minor supervisory employees constituting nothing more than the utterance of individual views, not authorized by the employer and not of such character or made under circumstances reasonably calculated to give rise to the conclusion that they are an expression of his

policy, do not constitute interference with the employees in their right of self-organization, within the meaning of the Act. National Labor Relations Board v. Whittier Mills Co., 5 Cir., 111 F.2d 474; National Labor Relations Board v. Mathieson Alkali Works, 4 Cir., 114 F.2d 796. But a continued course of conduct, evidenced in part by statements and comments of foremen, bosses, or other employees having some supervisory authority, in connection with other circumstances entitled to consideration, may in the aggregate constitute interference, restraint, coercion, and domination in respect to the exercise of the right of self-organization. Such statements or even suggestions, made at the opportune time, under favorable circumstances, and to the right person, along with other circumstances, may amount to pressure, within the purview of the Act. National Labor Relations Board v. Virginia Electric & Power Co., supra. Here, the statements which the Board found were made by the superintendent, foremen bosses, and others having some measure of supervisory authority, were much more than mere casual of desultory expressions constituting only the utterance of individual views.

 It is contended that the Board and the Union are estopped from challenging the validity of the Mill Association as the bargaining representative of the employees at the mills. Pursuant to stipulation entered into by the Board and all parties in interest, three elections were held under the direction of the Board for the selection of a collective bargaining representative of such employees. At the first election 970 votes were cast, of which 481 were for the Union, and 454 were for the Mill Association. Neither having received a majority of the total votes cast, a second or run-off election was held, with opportunity to choose or reject only the Union, and it was rejected. At the third election, the Mill Association received 784 votes and the Union received 531. The stipulation under which that election was held provided that the Company would recognize the winner as the exclusive bargaining agency, and therefore the Mill Association was certified as the duly selected bargaining agency. Section 9(c) of the Act, supra, 29 U.S.C.A. § 159(c), provides that the Board may investigate a controversy concerning the representation of employees, may take a secret ballot of employees, and may certify to the parties the name or names of the representatives that have been designated or selected. Section 10 empowers the Board to prevent unfair labor practices. Each section is complete in its field, and the respective functions of the Board under the two are entirely separate and distinct. American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347. It is clear that the holding of an election and the certification of a bargaining representative under section 9 do not estop or otherwise bar the Board from acting under section 10 to prevent unfair labor practices. Warehousemen's Union, etc., v. National Labor Relations Board, 74 App.D.C. 28, 121 F.2d 84, certiorari denied 314 U.S. 674, 62 S.Ct. 138, 86 L.Ed. 539. Moreover, in this instance some of the interference occurred after the elections were held and the certificate issued.

 The Company has never recognized the Independent Association of Mine Workers as the bargaining representative of the employees at the mine, and it is contended that the Board was without jurisdiction or authority to direct the Company to withdraw recognition from it and disestablish it. But the Company recognized such Association for the purpose of checkoff of dues and fees, and the Board found that the Company was grooming it to take the place of Employee's Committee, Department of Mines, as it groomed Independent Association of Mill Workers to take the place of Employee's Committee, Department of Mills. By the Act, supra, Congress committed to the Board power to determine the manner in which unfair labor practices may be expunged, and where the manner selected is reasonable and fairly adapted to the situation, it is not to be set aside on review. National Labor Relations Board v. Link-Belt Co., supra. The Company and the Mine Association were both before the Board. It had jurisdiction of them, and it cannot be said that the provision in the order respecting the withdrawal of recognition and disestablishment of the Mine Association was unreasonable or not fairly adapted to the situation.

The order of the Board will be enforced.

PHILLIPS, Circuit Judge (dissenting).

It is my opinion that the findings of the Board are not supported by substantial evidence.

It appears beyond doubt that the two independent Associations, which were in no sense successors to, or continuations of, company-dominated committees, were organized freely and voluntarily by the employees at the mill and at the mine, respectively. Moreover, a substantial majority of the employees at the mill, at an election called and conducted by the Board, designated the Milling Association as their choice for bargaining representative.[1]

I agree that the statements of the supervisory employees standing alone might constitute a basis for a finding of unfair labor practices. But such statements were made in violation of positive instructions issued by the petitioners to their supervisory employees; such instructions were publicized by the petitioners and were known to their employees; and petitioners repeatedly disavowed any such statements on the part of their supervisory employees and advised their employees fully as to petitioners' labor policy which fully conformed to the requirements of the National Labor Relations Act. There was a complete absence of any discrimination by petitioners with respect to hire or tenure and thus their acts conformed to their statements with respect to their labor policy. The evidence affords no basis for a conclusion that the statements and disavowals by the petitioners were not made in good faith or that they did not fully dissipate in the minds of the employees any effect of the statements made by the supervisory employees. It seems clear to me that in the face of such a policy, declared and adhered to by petitioners, and the disavowals by them of the statements made by supervisory employees, such statements can not be attributed to the petitioners. In such a setting, the statements of the supervisory employees lose any probative value and do not constitute substantial evidence justifying the destruction of the Associations.[2]

In granting the checkoff, the petitioners complied with the mandatory requirements of state law. 1937 Utah, S.L.,Ch. 57, Utah Code, 1943, § 49-14-1 et seq.

The other matters relied on by the Board are trivial and nonconsequential. I think the enforcement of the order should be denied.

---

[1] At a prior election called and conducted by the Board the employees at the mill rejected an affiliate of a national union when such affiliate was the only name on the ballot.

[2] E. I. du Pont de Nemours & Co. v. National Labor Relations Board, 4 Cir., 116 F.2d 388; National Labor Relations Board v. Mathieson Alkali Works, 4 Cir., 114 F.2d 796.