## NATIONAL LABOR RELATIONS BOARD v. STREMEL.

### No. 2815.

Circuit Court of Appeals, Tenth Circuit.

March 2, 1944.

Owsley Vose, of Washington, D. C. (Robert B. Watts, Howard Lichtenstein and John E. Lawyer, all of Washington, D. C., on the brief), for petitioner.

J. H. Boutcher, of Denver, Colo., for respondent.

Before PHILLIPS and MURRAH, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board.[1] The respondent, Joseph Stremel, is engaged in the operation of a coal mine near Hayden, Colorado. He sells approximately twenty per cent of his coal production to the Denver & Salt Lake Railway Company. The Railway Company used such coal for locomotive fuel. It is a common carrier engaged primarily in the transportation of interstate freight. The Board had jurisdiction.[2]

In response to a request of certain employees at the mine, John Harmon, District Representative of the United Mine Workers of America, District 15,[3] went to the mine during the employees' lunch period on January 10, 1942. He was accompanied by one Ralph Ingle. Harmon requested permission from Jack Evans, the mine foreman, to talk to the employees. Evans, believing that Harmon and Ingle were insurance agents, granted the request. Ten of the employees signed a written document designating the Union and Harmon as their bargaining representatives, and Harmon

---

[1] Hereinafter called the Board.
[2] Southern Colorado P. Co. v. National Labor Relations Board, 10 Cir., 111 F.2d 539, 541-543; National Labor Relations Board v. Crowe Coal Co., 8 Cir., 104 F.2d 633, 635, 636; Wickard v. Filburn, 317 U.S. 111, 125, 63 S.Ct. 82, 87 L. Ed. 122.
[3] Hereinafter called the Union.

administered the oath or obligation of the Union to such employees. During the afternoon of that day Harmon called on three other employees of the mine at their homes in Hayden, and secured their signatures to the written document. Evans overheard Harmon administer the oath or obligation to the employees, and accused him of lying and ordered him off of the premises. On the evening of that day Evans wrote a letter to Stremel wherein he stated that the employees had joined the Union and that Stremel had better come to the mine. Evans endeavored to persuade the employees to withdraw from the Union. He told them that they had made a mistake, that they would have to pay Union dues, that they would not get any increase in pay, and that if they were going to cause trouble over the Union he would discharge all of them, one at a time.

Stremel arrived at the mine on the morning of January 15, 1942. After consulting with Evans, who advised him that all of the employees had joined the Union, Stremel directed Evans to assemble the employees in the engine house in order that he might talk to them. After the employees had been assembled, Stremel told them that he could not pay the Union scale and if they were going to remain in the Union he would have to close down the mine, and that they could quit then or continue working until noon. Several of the employees expressed their determination to remain in the Union. The employees returned to work and at Evans' request worked until the end of the shift. During the afternoon Evans told one of the employees that Stremel was going to phone for a new crew. At the close of the shift on January 15, the employees gathered in the bunkhouse to ascertain whether Stremel had changed his mind about shutting down the mine. Stremel reiterated that if the men remained in the Union he could not operate and would close the mine. The employees then left the premises, inquiring on the way out when they could obtain their pay checks. As the employees left Stremel said: "She is closed down." The men had made no demand for an increase in wages and had not threatened to strike. They left the premises because Stremel told them unless they gave up their Union membership he would close the mine. The mine was shut down on January 16, 1942. It reopened January 17, 1942, with new employees. On February 5, 1942, Evans discharged Frank Ealey, one of the new employees, because he was a member of the Union.

On February 4, 1942, Evans reemployed Sumner Hockett after first ascertaining that he no longer belonged to the Union. Evans told Hockett he could not be a Union man and work at the mine. On February 16, 1942, Evans refused the application of Frink for reinstatement. He told Frink that Stremel's instructions were not to hire "any of the twelve fellows that joined the Union."

The Board found that Stremel, by shutting down the mine on January 15, 1942, discriminated against his employees with respect to hire and tenure of employment for the purpose of discouraging membership in the Union, and thereby violated Section 8(3) of the National Labor Relations Act,[4] 29 U.S.C.A. § 158(3), and that Stremel, by his efforts to induce the employees to withdraw from the Union, had interfered with, restrained and coerced his employees in the exercise of the rights guaranteed them by Section 7 of the Act, 29 U.S.C.A. § 157, and thereby violated Section 8(1) of the Act. The Board ordered Stremel to cease and desist from his unfair labor practices, to reinstate one employee, to make whole eight employees for resulting losses of pay, and post appropriate notices.

■■ The Board's findings are supported by substantial evidence and are conclusive on review.[5] A shut-down or lock-out of employees for the purpose of discouraging membership in a labor organization constitutes a discrimination within Section 8(3) and (1) of the Act.[6]

Accordingly, the order of the Board will be enforced.

4 Hereinafter called the Act.

5 Utah Copper Company v. National Labor Relations Board, 10 Cir., 139 F. 2d 788; National Labor Relations Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305; National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368.

6 National Labor Relations Board v. National Motor Bearing Co., 9 Cir., 105 F.2d 652, 657; National Labor Relations Board v. Mall Tool Co., 7 Cir., 119 F.2d 700, 701; Atlas Underwear Co. v. National Labor Relations Board, 6 Cir., 116 F.2d 1020, 1023.